Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Attorney for Plaintiff and all others similarly situated

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JACOB BENNETT,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**SETSCHEDULE INC.,** a Delaware corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Jacob Bennett ("Bennett" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant SetSchedule Inc. ("SetSchedule" or "Defendant") to stop SetSchedule from violating the Telephone Consumer Protection Act by placing unsolicited, autodialed phone calls to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by SetSchedule's conduct. Plaintiff, for his Complaint, alleges as follows

upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Bennett is a Martinsville, Indiana resident.

2. Defendant SetSchedule is a Delaware registered corporation headquartered in Irvine, California. SetSchedule conducts business throughout this District, the state of California, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and because the wrongful conduct giving rise to this case was directed to Plaintiff from this District.

## INTRODUCTION

5. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). By 2003, due to more powerful autodialing technology, telemarketers were calling 104

million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

6. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

7. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

8. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. See id.

9. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

**INTRODUCTION**

10. SetSchedule offers a paid lead generation platform to real estate agents that provides the real estate agents with consumer leads, automated

marketing tools and other data services including a customer relationship management system.[2]

11. SetSchedule markets its services exclusively to real estate agents.

12. SetSchedule places autodialed calls in order to market its lead generation platform to real estate agents.

13. SetSchedule places these autodialed sales calls to cell phone numbers without obtaining prior express written consent.

14. SetSchedule placed an unsolicited, autodialed sales call to Plaintiff.

15. In response to this call, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease placing unsolicited, autodialed phone calls to cellular telephone numbers, as well as an award of statutory damages to the members of the Class.

## COMMON ALLEGATIONS

**SetSchedule Violates the TCPA By Placing Autodialed Phone Calls to Cell Phone Owners
Without the Required Prior Express Written Consent to Make Such Calls**

16. SetSchedule is open about the fact that it places cold calls in order to solicit business from real estate agents.

17. In a job posting for an Inside Sales Rep position, SetSchedule specifically mentions cold communications.

---

[2] https://www.linkedin.com/company/setschedule/about/

> **What will you do?**
> - Market the SetSchedule product to real estate agents and teams nationwide
> - Create and initiate Sales opportunities through cold communications
> - Communicate and Schedule potential customers to review product offerings
> - Provide technology training and demonstrations for optimal customer understanding
> - Present SetSchedule Products and Promotions[3]

18. Employee reviews for SetSchedule illustrate the importance of placing calls to real estate agents, with one employee even claiming that they were required to make 300 outbound calls per day:

> **2.0 ★★☆☆☆ Sweat shop of calls**
> Inside Sales (Former Employee) - Irvine, CA - January 23, 2019
>
> Management is fantastic... but this is not a job where you can make a decent living.
>
> You have to make 300 outbound calls per day, and 4 hours of talk time.
>
> If you do not give 5 presentations a day you will be fired.
>
> *** BE PREPARED TO DIAL ALL DAY LONG ***[4]

19. Other employees have complained about the calling they were required to do in general, with one employee making the claim that they were required to spam realtors with calls:

> **Cons**
> Everything! Fake product, lying to realtors, spamming realtors with calls, twisting your words to bamboozle them into a product that promises so much but delivers nothing. It's a lie, it's a scam for their money. Leads and appointments are made up. Believe the[5]

---

[3] https://recruit.hirebridge.com/v3/Jobs/JobDetails.aspx?cid=7690&jid=483095
[4] https://www.indeed.com/cmp/Setschedule/reviews
[5] https://www.glassdoor.com/Reviews/SetSchedule-Reviews-E1079898.htm

20. SetSchedule agents rely on the use of an autodialer in order to place 300 outbound calls per day to real estate agents.

21. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines," and for all calls to numbers registered on the DNC. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶¶ 2, 20-21 (Feb. 15, 2012)

22. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to making autodialed solicitation calls to potential customers.

23. Real estate agents have complained online and specifically to SetSchedule about unsolicited autodialed calls that were received from SetSchedule agents. These complaints include the following:


**Brian Kimball**
Local Guide · 50 reviews · 12 photos
★☆☆☆☆  a week ago
UPDATE EDIT:  I just got another ROBO call from them despite their verification of removing me from their list 2 months ago.  Clearly they have no concern or respect for people.  I am sure the FCC will look forward to talking to them...I have already began filing a complaint.  Enjoy, spammers.

ORIGINAL REVIEW:
These people are spammers.  regardless of requests to take my info out of their system, i keep getting their garbage marketing.  Thanks for nothing.

👍 1

**Response from the owner** a week ago
Thank you for letting us know. Please email support@setschedule.com so that we can take steps to



[6]


**Brittany Leighton**
15 reviews · 1 photo
★☆☆☆☆  3 months ago
Telemarketer called me from this company and had a terrible attitude. Not to mention where she found my info it's written that the phone number is a private mobile and not to call it.

👍 1

**Response from the owner** 3 months ago
Please note that Setschedule does not own Telemarketers that represents the company. We will be happy to address this issue immediately, if any company represented itself as Setschedule. If you have any questions, please feel free to email … More


**Christopher Benedict**
7 reviews · 3 photos
★☆☆☆☆  10 months ago
Constantly spams my phone texts with messages about sending me leads.  Marketing via text is NOT cool. It is just the new age spam.  Call the corporate number and you get a voicemail when you want to speak to someone.


**The Kristie Brand**
8 reviews
★☆☆☆☆  10 months ago
They messaged me day and night Even after I threatened to sue them these guys still are sending me messages to my phone even after I opted out they turned around a minute later and sent it from a different number they are violating my rights as a consumer and I do not appreciate it. The employees try to talk to you personally and come on to you sending me emails of them with no shirt on. I'm completely turned off by this company and I would never do business with them!

---

[6] https://www.google.com/search?safe=strict&biw=1440&bih=692&ei=95xSXqmwJ7LE1QHulbTYCg&q=%22setschedule

CLASS ACTION COMPLAINT
-7-

> **Hasib Rasool**
> 4 reviews
> ★☆☆☆☆ 10 months ago
> Another company going after real estate agents money. Poor and hungry losers. The sales guy was so mad he was about to cry when I didn't sign up and hung up. Now they won't stop sending me spam to my email and phone. God has a place in hell for people like them.

> **Andrew Given**
> Local Guide · 21 reviews · 68 photos
> ★☆☆☆☆ 10 months ago
> This company has been spamming me with texts for months. Each time it comes through with a new number and there customer service mysteriously doesn't know how that's happening.

24. Additional consumer complaints that were posted online about unsolicited calls from SetSchedule include the following:

- "**Call clicks over to operator upon answer**. Operator asks if you are a realtor taking listings and that her branch manager wants to speak with you because they identified you from your profile. Company is Set Schedule. She actually says it's 'not a sales call,' which is humorous. I told them I was not interested before she went through the whole script, but this is a company that supposedly takes ads on your behalf and then delivers seller leads. Same as any number of other companies trying to get in your pocketbook- promise the moon and then have numerous variety of excuses when those results don't come in. Blocked!!"[7] (emphasis added)
- "Robo type call, no message left."[8]
- "Real Estate scam."[9]
- "Same deal. Keeps calling, and leaves no message."[10]
- "Unsolicited call"[11]

---

[7] https://800notes.com/Phone.aspx/1-949-201-2389
[8] https://800notes.com/Phone.aspx/1-949-619-6073
[9] https://800notes.com/Phone.aspx/1-949-484-7706
[10] *Id.*
[11] https://www.shouldianswer.com/phone-number/9492012389

**Plaintiff Received an Unsolicited Autodialed Phone Call to His Cell Phone**

25. Plaintiff Bennett is a real estate agent.

26. On February 12, 2020 at 3:16 PM, Plaintiff Bennett received an autodialed call on his cell phone from SetSchedule using phone number 949-299-0329.

27. When Plaintiff answered the call, there was a 2-second pause before the live agent came on the line, indicating the use of an autodialer.

28. The agent called Plaintiff to solicit the services of SetSchedule.

29. Plaintiff asked the agent how she acquired his contact information as the call was unsolicited. The agent told Plaintiff that SetSchedule analyzed the broker's website that Plaintiff works for and acquired his information there.

30. Plaintiff confirmed with the agent 3 times that she was calling from SetSchedule.

31. Plaintiff ended the call making it clear he was not interested in the services offered by SetSchedule.

32. Plaintiff has never had a relationship with SetSchedule and has never provided SetSchedule express written consent to contact him.

33. The unauthorized phone call placed by SetSchedule, as alleged herein, has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy,

and disturbed Bennett's use and enjoyment of his cellular phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

34. Seeking redress for these injuries, Bennett, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed phone calls to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

35. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone number, (3) using a calling platform similar to the platform Defendant used to call Plaintiff, (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.

36. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in

which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

37.  **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

38.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendant used an automatic telephone dialing system to place calls to Plaintiff and the members of the Autodialed No Consent Class;
>
> (b) whether Defendant placed calls to Plaintiff and the members of the Autodialed No Consent Class without prior express written consent;

(c) whether Defendant's conduct constitutes a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

41. Plaintiff repeats and realleges paragraphs 1 through 40 of this Complaint and incorporates them by reference.

42. Defendant and/or its agents placed unwanted solicitation calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

43. These solicitation phone calls were made *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation phone calls.

44. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

45. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bennett, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above, and appointing Plaintiff as the representative of the Class and his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**JACOB BENNETT**, individually and on behalf of those similarly situated individuals

Dated: March 2, 2020

By:   /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Class*